Baxter **ETHRIDGE,** Plaintiff,

v.

**STATE OF ALABAMA,**
et al., Defendants.

Civ. A. No. 93–T–754–S.

United States District Court,
M.D. Alabama, S.D.

Nov. 15, 1993.

904

Kenneth Coy Sheets, Jr., Dothan, AL, for plaintiff.

Patrick L. Roberts, Asst. Atty. Gen., Montgomery, AL, for State of Alabama, Alabama Peace Officers Standards and Training Com'n, John W. Anderson, ACADEMY, a corporation, Van Davis.

Karen M. Ross, R. Larry Bradford, Bradford & Associates, P.C., Birmingham, AL, for City of Slocomb, Alabama, Tony Hobbs.

## ORDER

MYRON H. THOMPSON, Chief Judge.

Plaintiff Baxter Ethridge brings this action alleging discriminatory treatment on the basis of his disability, in violation of both federal and state law: the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101 to 12213, commonly referred to as the "ADA"; and 1975 Ala.Code § 21-7-8.[1] The Southwest Alabama Police Academy disqualified Ethridge on the ground that he was unable to perform the minimal qualification exercises due to a disability in his right hand, and the City of Slocomb Police Department consequently terminated his employment.[2] Ethridge has brought this action against and has named as defendants the State of Alabama, the Alabama Peace Officers Standards and Training Commission, the Southwest Ala-

bama Police Academy, the City of Slocomb, and officials of those institutions. This cause is now before the court on motions by defendants City of Slocomb and Slocomb City Police Chief Tony Hobbs for summary judgment on the federal claim and judgment on the pleadings on the state claim. For the reasons that follow, the court will deny both motions.

## I. FEDERAL LAW CLAIM: THE ADA

### A. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

### B. *Discussion*

■ Defendants contend that the ADA had not yet become effective against the City of Slocomb at the time of the defendants' alleged discriminatory termination of Ethridge. Defendants have presented evidence to show that Chief Hobbs terminated Ethridge on April 23, 1992, and that the City of Slocomb approved the termination on May 26, 1992. Defendants argue that the ADA's coverage of their employment practices commenced no earlier than July 26, 1992, and

---

1. In his complaint, Ethridge gives the statutory citation for the ADA as "42 USC Section 12201 et seq." The court assumes that, because Ethridge appears to rely on the entire Act, the reference to § 122 01, rather than § 121 01, is a typographical error.

2. Ethridge was required to obtain at least 240 hours of formal police training within nine months of his employment with the Slocomb Police Department, pursuant to 1975 Ala.Code § 36–21–46(a)(3).

more likely not until July 26, 1994, after the alleged discrimination occurred.

In their motion, defendants assume that Ethridge is bringing his claim pursuant to Title I of the ADA, 42 U.S.C.A. §§ 12111–12117, although Ethridge did not limit his action to Title I in his complaint. Section 12112 of Title I prohibits employment discrimination on the basis of disability.[3] Defendants' motion rests on Title I's definition of "employer" as:

"a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person."

42 U.S.C.A. § 12111(5)(A).[4] Therefore, for employers with 25 or more employees, the effective date of Title I is July 26, 1992, and, for employers with between 15 and 25 employees, the date is July 26, 1994.

Defendants maintain that, because Slocomb had "19 or fewer continuous employees during 1992," their actions, even if discriminatory, would not be subject to the proscriptions of the ADA until July 26, 1994.[5] They further argue that, assuming that Slocomb employed more than 25 people as Ethridge alleges, their actions were not covered by Title I prior to July 26, 1992. The court agrees with defendants that Title I, standing alone, did not apply to Slocomb during the relevant period.

The defendants, however, limit their motion for summary judgment to Title I of the ADA. They do not address Ethridge's argument that Title II of the Act applies to their actions. Admittedly, Ethridge did not specify under which title of the ADA he was proceeding in his complaint. Nevertheless, because Ethridge cited to the entire ADA in his complaint and because in his brief in opposition to defendants' motion for summary judgment he argues that he has a valid cause of action under Title II, the court will not grant defendants' motion for summary judgment if Ethridge has a valid cause of action against them under any of the ADA's provisions.

Title II of the ADA prohibits "discrimination" in "public services," and became effective on January 26, 1991—before the allegedly discriminatory termination of Ethridge. In addition to specific statutory prohibitions addressing public transportation, Title II sets forth a general statement prohibiting discrimination by "public entities" on the basis of disability:

"Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."

42 U.S.C.A. § 12132. The term "public entity" includes "any State or local government." 42 U.S.C.A. § 12131(1)(A). A plain reading of this section does not reveal, however, whether Title II covers "employment" discrimination, which is addressed more specifically in Title I.

The legislative history of and regulations promulgated under Title II, however, make clear that this section prohibits employment

---

**3.** Section 12112(a) provides:

"No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

A "covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C.A. § 12111(2).

**4.** 42 U.S.C.A. § 12111(7) incorporates the definition of person in 42 U.S.C.A. § 2000e(a). That section defines person to include "governments, governmental agencies, political subdivisions." Slocomb, therefore, satisfies the definition of employer to that extent.

**5.** Jo Ann Lindsey Aff. ¶ 3.

discrimination by public entities on the basis of disability. A primary purpose of § 12131 was to extend the reach of § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794,

> "to all programs, activities, and services provided or made available by state and local governments or instrumentalities or agencies thereto, regardless of whether or not such entities receive Federal financial assistance. Currently, section 504 prohibits discrimination only by recipients of Federal financial assistance."

H.Rep. No. 485(II), 101st Cong., 2d Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 366. Section 504, including its amendments and regulations, clearly applies to employment discrimination. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 626, 104 S.Ct. 1248, 1250, 79 L.Ed.2d 568 (1984); 28 C.F.R. § 41.52.[6]

The House Report's discussion of § 12132 further clarifies that Title II incorporates employment discrimination as proscribed in Title I and the Rehabilitation Act:

> "The Committee has chosen not to list all the types of actions that are included within the term 'discrimination', as was done in titles I and II, because this title essentially simply extends the anti-discrimination prohibition embodied in [the Rehabilitation Act] to all actions of state and local governments. The Committee intends, however, that the forms of discrimination prohibited by [§ 12132] be identical to those set out in the applicable provisions of titles I and III of this legislation."

H.Rep. No. 485(II), 101st Cong., 2d Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 367.

If any doubt remained, § 12133 of Title II specifically incorporates the "remedies, procedures, and rights" set forth in the Rehabilitation Act. Furthermore, regulations implementing Title II of the ADA state: "No qualified individual with a disability shall, on the basis of disability, be subjected to dis-

crimination in employment under any service, program, or activity conducted by a public entity." 28 C.F.R. § 35.140(a). These regulations further provide that, even if a public entity is not subject to the jurisdiction of Title I, the requirements of the Rehabilitation Act as set forth at 28 C.F.R. § 41 will apply to prohibit employment discrimination. 28 C.F.R. § 35.140(b)(2). Moreover, even though the ADA has only recently become effective, several courts have applied Title II to employment discrimination by public entities. *See Bell v. Retirement Bd. of the Firemen's Annuity and Benefit Fund of Chicago,* 1993 WL 398612 (N.D.Ill.1993); *Finley v. Giacobbe,* 827 F.Supp. 215 (S.D.N.Y.1993); *Petersen v. University of Wisconsin Bd. of Regents,* 818 F.Supp. 1276 (W.D.Wis.1993).

This court therefore finds that Title II of the ADA was effective against Slocomb before the defendants' alleged discrimination against Ethridge in April and May 1992, and that Title II clearly reaches employment discrimination by public entities. Ethridge has a valid cause of action against defendants under the ADA.[7]

■ Although not part of their summary judgment motion, defendants in their answer to Ethridge's complaint challenge this court's jurisdiction to hear his ADA claim. Defendants state the following as their fifth defense:

> "Slocomb and Chief Hobbs deny that this court has jurisdiction of this ADA case against them. They have never received a charge of discrimination from [the Equal Employment Opportunity Commission]."[8]

This jurisdictional challenge must be addressed before the court can proceed further. For the reasons that follow, the court finds that although the filing of a charge with the Equal Employment Opportunity Commission, commonly known as the "EEOC", may

---

6. 28 C.F.R. § 41.52(a) provides: "No qualified handicapped person shall, on the basis of handicap, be subjected to discrimination in employment under any program or activity that receives or benefits from federal financial assistance."

7. Of course, the court at this time expresses no opinion as to the merits of Ethridge's claim of discrimination.

8. Defendants' answer at 6.

be required under Title I, it is not required under Title II.[9]

Title II incorporates the enforcement procedures of the Rehabilitation Act, 42 U.S.C.A. §§ 12117, 12133, which do not require exhaustion of administrative remedies for non-federal employees. *See Smith v. Barton*, 914 F.2d 1330 (9th Cir.1990), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991); *Pushkin v. Regents of the University of Colorado*, 658 F.2d 1372 (10th Cir.1981); *Ali v. City of Clearwater*, 807 F.Supp. 701 (M.D.Fla.1992). An analysis of Title II regulations further makes clear that, while resort to administrative remedies is optional, it is not required. Subpart F of these regulations establishes jurisdiction of Title II claims in both the EEOC and the Department of Justice. 28 C.F.R. §§ 35.-170–178. These channels, however, are intended to be optional, not mandatory:

"The Act requires the Department of Justice to establish administrative procedures for resolution of complaints, but does not require complainants to exhaust these administrative remedies. The Committee Report makes clear that Congress intended to provide a private right of action with the full panoply of remedies for individual victims of discrimination. Because the Act does not require exhaustion of administrative remedies, *the complainant may elect to proceed with a private suit at any time.*"

Appendix A to 28 C.F.R. § 35.172 (emphasis added). Thus, even assuming that Title II's incorporation of the remedies of the Rehabilitation Act does not settle the exhaustion question, the regulations plainly state that exhaustion is not required. Because these regulations are a reasonable and permissible construction of Title II, the court must defer to them in interpreting Title II. *Chevron, U.S.A., Inc. v. Natural Resources. Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984); *Jaramillo v. Immigration and Naturalization Service*, 1 F.3d 1149, 1152 (11th Cir.1993). Other courts faced with the question of exhaustion under Title II have come to the same conclusion. *See Petersen v. University of Wisconsin Bd. of Regents*, 818 F.Supp. 1276, 1278–80 (W.D.Wis.1993) (detailed analysis concluding administrative exhaustion not required under Title II); *Bell v. Retirement Bd. of the Firemen's Annuity and Benefit Fund of Chicago*, 1993 WL 398612, at *4 (N.D.Ill.1993); *Finley v. Giacobbe*, 827 F.Supp. 215, 219 n. 4 (S.D.N.Y.1993).

The court finds, therefore, consistent with both the Rehabilitation Act and Title II regulations, that Ethridge need not file a complaint with the EEOC, as argued by defendants, in order for this court to have jurisdiction over his claim under Title II of the ADA.[10] Ethridge's ADA claim is properly before the court.

## II. STATE LAW CLAIM: § 21–7–8

■ Ethridge also brings this action under 1975 Ala.Code § 21–7–8, which declares it to be the policy for political subdivisions of the State of Alabama to employ disabled persons.[11] In their motion for judgment on the

---

9. *See* 42 U.S.C.A. § 12117 (discussing enforcement procedures under Title I); *Kent v. Director, Mo. Dept. of Elem. & Sec. Educ.*, 792 F.Supp. 59, 62 (E.D.Mo.1992) (the filing of an EEOC charge is a statutory procedural prerequisite under Title I, albeit not a jurisdictional requirement), *remanded on other grounds*, 989 F.2d 505 (8th Cir.1993) (table).

10. Because defendants' actions are not covered by Title I, this court need not reach the more difficult question of whether a plaintiff bringing an action under both Titles I and II must exhaust administrative remedies. At least one court has held that even such a plaintiff need not exhaust administrative remedies. *Petersen*, 818 F.Supp. at 1280.

In any event, it may be that Ethridge has already filed an administrative complaint with

the Department of Justice. Ethridge states in his complaint that he has done so; he has not, however, filed a copy with the court, nor apparently have defendants been served notice of a complaint filed with the Department of Justice. Consistent with this order, if Ethridge has filed a complaint with the Department of Justice or the EEOC, it is his option to have done so, but not a prerequisite for the instant action.

11. Section 21–7–8 provides:

"It is the policy of this state that the blind, the visually handicapped and the otherwise physically disabled shall be employed in the state service, the service of the political subdivisions of the state, in the public schools and in all other employment supported in whole or in part by public funds on the same terms and conditions as the able-bodied, unless it is

pleadings, defendants argue that § 21–7–8 does not create a private cause of action.

It appears that only one case, *Averyt v. Doyle,* 456 So.2d 1096 (Ala.Civ.App.1984), addresses § 21–7–8. In that case, a dismissed employee appealed his dismissal to the Mobile County Personnel Board. He subsequently brought an action in state court alleging a violation of § 21–7–8. The issue before the Alabama Court of Civil Appeals in *Averyt* was whether the subsequent action was barred because the § 21–7–8 claim could have been raised before the Personnel Board. The court held that "Precisely the same facts and issues were, or could have been, examined at the Personnel Board hearing as if in a court of law, including whether the nature of Averyt's disability was such that it 'prevented the performance of the work involved.'" *Id.* at 1098. The court implied that Averyt had a cause of action under § 21–7–8, but did not necessarily decide so.

In determining whether an Alabama statute creates a private cause of action, it is this court's "duty to ascertain and effectuate the legislative intent expressed in the statute, which may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained." *Bama Budweiser of Montgomery, Inc. v. Anheuser–Busch, Inc.,* 611 So.2d 238, 248 (Ala. 1992). When § 21–7–8 was passed along with other provisions in 1975, the preamble stated only that it was "setting forth a state employment policy." 1975 Ala.Acts 1711.[12] Whether § 21–7–8 creates a private cause of action appears to be an open question, and the language of the statute and dearth of case law provide this court with little guidance.

The court finds, however, that it need not decide whether a private cause of action exists at this time. The court's holding that Ethridge has a valid cause of action under the ADA affords him a much broader avenue by which to pursue his complaint. The ADA and its regulations specifically proscribe various forms of employment discrimination against persons with disabilities. The general policy set forth in § 21–7–8 to employ persons with disabilities does not, at this time, appear to impose any liability on defendants not addressed by the ADA. Additionally, it appears that the ADA encompasses the types of remedies and damages that Ethridge seeks.[13] Should it become apparent to the court at a later date that § 21–7–8 would impose liability or afford remedies or damages not covered by the ADA, this court may then need to decide whether that section creates a private cause of action.

Accordingly, for the above reasons, it is ORDERED that the motion for judgment on the pleadings and the motion for summary judgment, filed by defendants City of Slocomb and Police Chief Tony Hobbs on July 30 and August 12, 1993, are denied.

---

shown that the particular disability prevents the performance of the work involved."

**12.** By contrast, the preamble used different language to introduce other sections; for example, it stated that the Act was providing a "right to be accompanied by a guide dog" and "penalties for denial or interference with admittance of blind or otherwise disabled person to public facilities." 1975 Ala.Acts 1711.

**13.** The court notes, preliminarily, that Ethridge will need to show intentional discrimination to be able to recover compensatory damages, *see* 42 U.S.C.A. § 1981a(a)(2); *Wood v. President and Trustees of Spring Hill College in the City of Mobile,* 978 F.2d 1214, 1219 (11th Cir.1992), and may not be able to collect any damages if it is shown that defendants made a good faith effort to provide reasonable accommodation. *See* 42 U.S.C.A. § 1981a(a)(3).