**Baxter ETHRIDGE, Plaintiff,**

v.

**STATE OF ALABAMA,
et al., Defendants.**

**Civ. A. No. 93–T–754–S.**

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 8, 1994.

Kenneth Coy Sheets, Jr., L. Sharon Egbert, Dothan, AL, for plaintiff.

Patrick L. Roberts, Robert M. Weinberg, Office of Atty. Gen., Alabama State House, Montgomery, AL, Karen M. Ross, R. Larry Bradford, Bradford & Associates, P.C., Birmingham, AL, for defendants.

### MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Plaintiff Baxter Ethridge, who has restricted-use of his right arm and hand, claims in this lawsuit that he was denied employment as a police officer in violation of both federal and state law: the Americans with Disabilities Act, 42 U.S.C.A. § 12101 to 12213, commonly referred to as the "ADA"; and 1975 Ala.Code § 21–7–8. The Police Department of the Town of Slocomb, Alabama, terminated Ethridge's provisional employment and denied him permanent status because, due to his disability, he was unable to complete the Southwest Alabama Police Academy's state-required training program. Ethridge has brought this lawsuit against and has named as defendants the State of Alabama, the Alabama Peace Officers' Standards and Training Commission, the Southwest Alabama Police Academy, the Town of Slocomb, and officials of those institutions. This lawsuit is now before the court on two motions for summary judgment: one by the Town of Slocomb and its police chief (hereinafter collectively referred to as the "Slocomb defendants"); and the other by the State of Alabama, the Alabama Peace Officers' Standards and Training Commission and its executive secretary, and the Southwest Alabama Police Academy and its director (hereinafter collectively referred to as the "state defendants"). For the reasons that follow, the court will grant both motions.

### I. BACKGROUND

Ethridge has restricted-use of his right hand and arm as a result of certain blood vessel tumors he suffered at the age of 14. He is unable to straighten his right arm or rotate the palm of his right hand in an upward direction. Ethridge was "provisionally" employed as a police officer at the Slocomb Police Department in April 1991. Because Slocomb is a small rural town, he generally patrolled by himself, and, when he worked night shifts, he was the only officer on duty.

The appointment of police officers in Alabama is governed by a state law that prohibits local law enforcement agencies from hiring police officers unless they meet certain minimum qualifications, including age, educational, police training, and physical qualifications. 1975 Ala.Code § 36–21–46. The Alabama Peace Officers' Standards and Training Commission is charged with overseeing compliance with these minimum standards. Ethridge possessed the necessary qualifications with the exception of police training. A police officer may, however, be provisionally appointed pending the satisfactory completion of "at least 240 hours of formal police training in a recognized police training school ... within nine months." *Id.* The Standards and Training Commission establishes the curriculum at recognized police academies. Because Ethridge began his employment on a provisional basis, the Slocomb Police Department had no authority to retain him if he did not complete the required training within nine months; his provisional appointment would become "null and void" under state law. *Id.*

In March 1992, the Slocomb Police Department sent Ethridge to the Southwest Alabama Police Academy. Prior to sending Ethridge to the Academy, the town's police chief accompanied Ethridge to a firing range where he observed that Ethridge had difficulty controlling a firearm with his right arm. The police department nonetheless sent Eth-

ridge to the Academy to determine if he could complete the required police training course.

After two weeks of academic training, Ethridge began the basic handgun qualification course. As part of this course, he was required to shoot with his right hand and also in a two-handed position referred to as the "Weaver stance." The Weaver stance required Ethridge to use his weaker right hand to support the pistol. The minimum passing score for this test was 70. Ethridge's three practice scores were 48, 58, and 58. His two for-the-record scores were 50 and 62.[1] Ethridge was subjected to the same test requirements as were all other candidates.[2]

According to the state defendants and a number of Ethridge's fellow students, Ethridge had difficulty loading and clearing his weapon during the firearms course, held the weapon too close to his person, and frequently held the gun so that it pointed in the direction of other members of the course. The state defendants further assert that Ethridge's performance during the course demonstrated that he would be a danger to himself and others if required to carry and use a firearm. Ethridge responds that, during the course, he was singled out for harsh treatment because of his disability and, specifically, that, while he was shooting, he was followed around by the Police Academy's director. The state defendants, supported by a number of Ethridge's fellow students, counter that, rather than being treated more harshly, Ethridge was given special attention and consideration.

On the basis of Ethridge's performance, the director of the Police Academy determined that it would be dangerous to Ethridge and the other students to allow him to participate in the night firearms test. . The director disqualified Ethridge from the Academy.[3] Because of Ethridge's failure to complete the Academy, the Slocomb Police Department then gave him one week's salary and terminated his provisional appointment as a police officer as required by 1975 Ala. Code § 36–21–46(3). The Town of Slocomb subsequently held a termination hearing, at which Ethridge was represented by counsel, and affirmed the termination.

On June 18, 1993, Ethridge filed this federal lawsuit. The Town of Slocomb and its police chief moved for summary judgment on the grounds that the ADA had not yet become effective against them at the time of Ethridge's termination and that, if it had, Ethridge did not exhaust his administrative remedies. By order of November 15, 1993, the court denied this motion. *Ethridge v. State of Alabama*, 847 F.Supp. 903 (M.D.Ala. 1993). The court concluded that, although Title I of the ADA—which covers employment discrimination—had not yet become effective against the Slocomb defendants, Title II—which covers discrimination in public services, including employment—had. *Id.* at 906. The court further concluded that exhaustion of administrative remedies was not required under Title II of the ADA.[4] *Id.* at 907. The Slocomb defendants also moved for judgment on the pleadings on the state law claim on the ground that the statute did not create a private cause of action. The court did not reach the question of whether the statute created a private cause of action, but denied the motion because, in any case, the ADA afforded Ethridge a broader avenue of relief than the state statute. *Id.* at 907–08.

In response to Ethridge's contention that he could have passed the basic handgun qualification course if he had been accommodated and not required to shoot in the Weaver stance, the court ordered a new firearms test

---

1. The state defendants and Ethridge have stipulated that Ethridge, "due to his disability, could not achieve a passing score of 70 on the ... Basic Handgun Qualification Course on April 9, 1992, while using the mandatory 'Weaver Stance.'" *See* State defendants' and plaintiff's stipulation filed on May 4, 1994.

2. As discussed below, however, Ethridge alleges that he was subjected to discriminatory testing *conditions.*

3. During a physical agility test at the Academy, Ethridge also had insufficient strength to climb over a fence.

4. Title I of the ADA is codified at 42 U.S.C.A. §§ 12111–12117; Title II is codified at 42 U.S.C.A. §§ 12131–12165.

under terms and conditions agreed upon by all parties. The order stated that,

> "during testing, the plaintiff shall not be required to assume or maintain the 'Weaver Stance' while firing his weapon. The plaintiff shall be permitted to shoot with one hand during all portions of the test which ordinarily require shooting in the 'Weaver Stance' position."[5]

In two firearms tests administered on May 14, 1994, under the conditions set forth by the court, Ethridge again failed, scoring a 52 on the first test and a 56 on the second. In the pending motions for summary judgment, the defendants assert that Ethridge is not entitled to relief as a matter of law under either of his federal or state claims; they argue that Ethridge is not qualified to be a police officer and could not become qualified with any reasonable accommodation.

## II. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993) (discussing how the responsibilities on the movant and the nonmovant vary depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or nonmovant bears the burden of proof at trial).

### B. Federal Law Claim: The ADA

■ As this court previously held, Ethridge's complaint states a claim under Title II, but not Title I, of the ADA. *Ethridge v. State of Alabama,* 847 F.Supp. at 906. The analysis of the instant motions, therefore, must proceed from Title II. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132. The term "public entity" includes "any State or local government." 42 U.S.C.A. § 12131(1)(A). The "remedies, procedures, and rights" for a claim of *discrimination in general* under Title II are those set forth in the Rehabilitation Act of 1973, 29 U.S.C.A. § 794.[6]

Discrimination as proscribed by Title II includes employment discrimination: "No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity." 28 C.F.R. § 35.140(a). It follows that the standards to be applied to a claim of *employment discrimination* against an entity subject to the jurisdiction of Title II, but not Title I, are the requirements of the Rehabilitation Act and the regulations promulgated thereunder, specifically, 28 C.F.R. § 41.[7] It would appear at first glance, therefore, that Title I's standards and regulations are of no weight when considering a claim of employment discrimination under Title II. A 1992 amendment to the Rehabilitation Act, however, directs that the standards to be applied when considering a claim of employment discrimination under the Rehabilitation Act are "the standards applied under title I of the Americans with

---

5. Order of May 2, 1994, at ¶ 3.

6. The Rehabilitation Act provides that "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C.A. § 794. A primary purpose of Title II was to extend the reach of the Rehabilitation Act to all public entities, regardless of whether or not they receive federal funds. H.Rep. No. 485(II), 101st Cong., 2d Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 267, 366.

7. 28 C.F.R. § 35.140(b)(2) (the Rehabilitation Act and its regulations apply if the "public entity is not also subject to the jurisdiction of title I").

Disabilities Act of 1990." 29 U.S.C.A. § 794(d).[8] Thus, because the standards of the Rehabilitation Act are to be incorporated through Title II, Ethridge's claims are ultimately to be evaluated under the standards of Title I as well, although the defendants in this case are not subject to the jurisdiction of Title I. As a result, public entities that are not subject to the coverage under Title I of the ADA are governed by two separate sets of standards governing employment discrimination: (1) the Rehabilitation Act and its regulations; and (2) Title I of the ADA and its regulations. However, because the standards of Title I and its regulations are more exhaustive than and not in conflict with the Rehabilitation Act and its regulations, the court will look primarily to the standards of Title I and its regulations in evaluating Ethridge's claim under the ADA.[9]

Turning now to the appropriate standards, the court must begin with Title II's prohibition of discrimination against a "qualified individual with a disability." 42 U.S.C.A. § 12132.[10] Under Title I regulations, a qualified individual with a disability is defined as "an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m). If an individual with a disability is qualified under this definition, an employer must make "reasonable accommodations to the known physical or mental limitations of [the] otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C.A. § 12112(b)(5)(A). *See Fitzpatrick*

*v. City of Atlanta,* 2 F.3d 1112, 1125–27 (11th Cir.1993) (setting forth identical standards and case law for claim under Rehabilitation Act). Moreover, an employer may not use "qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals unless that standard, test, or other selection criteria ... is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C.A. § 12112(b)(6).

Although Ethridge's complaint is not a model of clarity, the court perceives three separate theories under which he alleges that the defendants violated the ADA. First, Ethridge asserts that he could have passed the required handgun course if reasonable accommodation had been made and if he had not been subjected to disparate, and harsher, treatment. Second, he asserts that it was unlawful for the Slocomb defendants to deny him employment on the ground that he did not complete the requisite police training. And third, he asserts that the requirement of a firearms course is itself discriminatory and that he could safely perform as a police officer without passing that course. The defendants respond that Ethridge is not "otherwise qualified" to be a police officer because he did not complete the required police training and that, in any case, they have reasonably accommodated him in his efforts to complete the required training and he nonetheless failed to pass the handgun course. The defendants further assert that, regardless of the training requirement, Ethridge cannot perform the essential functions of a police officer because he cannot safely shoot in the Weaver stance. The court will now analyze each of Ethridge's theories to determine if the defendants are entitled to summary judgment on his ADA claim.

8. In *Vande Zande v. State of Wisconsin Dept. of Admin.,* 851 F.Supp. 353, 359 (W.D.Wis.1994), the court explained that, "With the passage of the ADA, the Rehabilitation Act was amended to allow the standards set forth in subchapter I of the ADA to govern employment discrimination cases under the Rehabilitation Act."

9. As the court explained in *Vande Zande,* Congress incorporated the standards of the Rehabilitation Act when drafting the ADA, and Rehabilitation Act case law is cited throughout the ADA's implementing regulations. As a general matter, the ADA and the Rehabilitation Act are to be interpreted consistently. 851 F.Supp. at 359.

10. It is undisputed that Ethridge is an individual with a disability; the dispute centers around whether he is qualified.

### 1. *Whether Ethridge Was Treated Discriminatorily or Not Reasonably Accommodated in His Efforts to Pass the Handgun Course*

Before considering the defendants' contention that Ethridge is not otherwise qualified to be a police officer—and is not therefore protected by the ADA—the court must first consider Ethridge's claims that he was treated discriminatorily and not reasonably accommodated in his efforts to pass the handgun course. If Ethridge could show that he was discriminated against during the course, the defendants could be held liable for such discrimination and the Slocomb defendants' reliance upon Ethridge's failure of that course as the basis for terminating him would be called into question. There are three components to Ethridge's claim of discrimination during the course itself. First, he asserts that he was singled out for harsher treatment and not reasonably accommodated by course instructors. Second, he asserts that the defendants failed to provide reasonable accommodation when they required him to shoot in the Weaver stance and that he could have passed the course if permitted to shoot with one hand. And third, he asserts that his dismissal from the handgun course before the "night shooting test" was discriminatory. The court will address each assertion in turn.

### a. *Disparate Treatment*

■ In considering Ethridge's assertion that he was singled out for harsher treatment and not reasonably accommodated during the handgun course, the court must first determine whether the defendants had a duty reasonably to accommodate him during that period. The court holds that they did. An employer need only provide reasonable accommodation to an individual with a disability who is otherwise qualified. During Ethridge's police training, he was a provisional employee with the Town of Slocomb pending his completion of the minimum qualification requirements; the very purpose of his attendance at the Police Academy was to determine if he was qualified. Thus, Ethridge was an applicant for the position of police officer and was not yet otherwise qualified as an employee. But because the ADA prohibits limiting applicants as well as employees in a way that adversely affects employment opportunities, 42 U.S.C.A. § 12112(b)(1), an employer is under a duty reasonably to accommodate applicants even before they are determined to be otherwise qualified for the position in question. That is, a disabled applicant who is otherwise qualified to gain entrance into a training course must be reasonably accommodated during that course even if the applicant is ultimately deemed not otherwise qualified for the position sought.

■ After reviewing the evidence presented by both parties, the court concludes that there is no genuine issue of material fact regarding whether Ethridge was treated more harshly or not reasonably accommodated by his instructors during the course; Ethridge was treated at least as well as the other members of his class and reasonable effort was made to accommodate his disability. In contrast to Ethridge's contention that he was treated more harshly than other students, the testimony of others present during Ethridge's handgun course shows that he was given special attention during the course. One instructor at the Police Academy stated that "Ethridge, with a great deal of assistance from [the Academy's director] and the other line officers, could not competently demonstrate the fundamentals of shooting in a safe manner." [11] A fellow student stated that "Firearms instructors ... did a lot to help Mr. Ethridge with his shooting." [12] Another fellow student stated: "I saw [two] instructors trying to help the plaintiff find a way to load his weapon so it would point straight down; so it wouldn't be pointing at Mr. Ethridge or anyone else; so it wouldn't be such a safety hazard." [13] The Academy's director further accommodated Ethridge by placing him at the right side of the range because he had a tendency to shoot to the

---

**11.** Patterson affidavit at 4.

**12.** Wood affidavit at 2.

**13.** Merida affidavit at 2. *See also* Henderson affidavit at 2; Carter affidavit at 2.

left. In support of his contention that the director treated him more harshly on the firing range, Ethridge states only that the director was following him around on the range. When asked what comments the director made to him while following him around, Ethridge responded:

> "Just several—just instructions, I suppose. What I should be doing and how I should be doing it ... just a way of shooting and different things about the course." [14]

Ethridge presented no other evidence of comments or conduct to show that he was treated more harshly; the undisputed evidence thus shows that he received more guidance and instruction than the other students.[15] The defendants, therefore, have shown that there is no genuine issue of material fact and that Ethridge was treated at least as well as the other members of his class and reasonable effort was made to accommodate his disability.

### b. Weaver Stance

The court will next consider Ethridge's second assertion that the state defendants failed to provide reasonable accommodation when they required him to shoot in the Weaver stance and that he could have passed the course if permitted to shoot with one hand. In arguing that the defendants failed reasonably to accommodate him at the Police Academy, Ethridge represented to the court that the "accommodation requested by the Plaintiff was to be permitted to fire his weapon in a manner different then [sic] the stated required Weaver position." [16] Although Ethridge presented no evidence that the ability to shoot in the Weaver stance is not an essential function, the defendants assumed without admitting that it would be a reasonable accommodation to permit Ethridge to take the handgun test in another position and agreed to such a retest. Pursuant to the order of this court, Ethridge and the defen-

dants developed agreed upon conditions under which Ethridge could retake the handgun test to determine if he could have passed the handgun test if given his requested accommodation. The order provided that, during the retest, Ethridge would be given two attempts to qualify and "not be required to assume or maintain the 'Weaver Stance' while firing his weapon," but rather would "be permitted to shoot with one hand during all portions of the test which ordinarily require shooting in the 'Weaver Stance' position." [17]

On May 14, 1994, Ethridge was permitted to take the handgun test, as he requested, by shooting with only one hand. It is undisputed that Ethridge again failed the handgun test, scoring 52 on the first administration and 56 on the second administration.[18] With the retest granted and the results in, Ethridge's claim that the defendants failed to provide him reasonable accommodation during the course and his claim that he could qualify if permitted to shoot as he wished are untenable. It is thus undisputed that Ethridge cannot successfully complete the handgun course required under Alabama law, even when his disability has been reasonably accommodated.

■ In an attempt to create a genuine issue of fact notwithstanding the retest, Ethridge now argues that his shooting ability deteriorated between the time of the original test and the retest because he sustained certain injuries and because he was out of practice at the time of the retest. Ethridge also presents some evidence that he was able to pass other firearms tests around the time of the original test. Thus, Ethridge attempts to create a factual dispute over whether he could have passed the handgun course if permitted to shoot with only one hand in April 1992 as opposed to in May 1994. Given the care with which the retesting conditions

---

14. Ethridge deposition at 142.

15. To the extent that Ethridge was singled out for different treatment, therefore, it was in an attempt to accommodate his disability. Such an attempt is a legitimate reason for disparate treatment which would serve as a defense to Ethridge's disparate treatment claim. 29 C.F.R. § 1630.15(a).

16. Memorandum in support of plaintiff's response to defendants' motion for summary judgment at 2.

17. Order of May 2, 1994, at 2–3.

18. McInnis affidavit at 1–2.

were crafted, given the fact that the tests which Ethridge may have passed were not even approved by the Standards and Training Commission and were not conducted by certified instructors, and finally given the undisputed testimony of the Academy's director and other students that Ethridge could not shoot safely with one hand during the original test in April 1992, the court can reach only one reasonable conclusion—that Ethridge's attempt to create a disputed issue of material fact does not succeed.

■ The court, however, has an independent basis upon which to reject Ethridge's assertion that an issue of fact exists: the defendants need not have accommodated Ethridge's request to shoot one-handed at all because the ability to shoot in the Weaver stance is an "essential function" as defined by the ADA. 42 U.S.C.A. § 12111(8); 29 C.F.R. § 1630.2(n) & App.A. Essential functions are those that an employee must be able to perform. Thus, although a disabled employee must be reasonably accommodated in order to perform the essential function, an employer need not hire an employee who cannot perform the essential function even with reasonable accommodation. *See School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); 29 C.F.R. §§ 1630.-2(n) & 1630.9, App.A. As discussed above, it is undisputed that Ethridge was unable to shoot in the Weaver stance even when reasonably accommodated by course instructors.[19]

In determining which job functions are essential, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C.A. § 12111(8). The defendants have presented evidence that the Weaver stance is a required position for passage of the Standards and Training Commission's handgun qualification course in every police academy in Alabama; and under Alabama law, passage of that course is a required qualification for police officers. Although whether a job function is essential is a "factual determination," 29 C.F.R. § 1630.2(n), App. A., Ethridge has presented no evidence whatsoever that the Weaver stance is not an essential function. *See Chiari v. City of League City,* 920 F.2d 311, 316–17 (5th Cir.1991) (affirming summary judgment in favor of city that terminated construction inspector who developed Parkinson's disease and could no longer safely perform essential functions of job where employee presented no evidence that he could safely perform essential functions). Given the ADA's direction to consider the employer's judgment and any written job requirements in determining which job functions are essential and given the absence of any contrary evidence from Ethridge, the court must conclude that there is no genuine dispute that the ability to shoot in the Weaver stance is an essential function that must be performed by police officers in Alabama.[20]

19. Although it is the defendants' burden of proof to show that no reasonable accommodation exists by which Ethridge could shoot safely in the Weaver stance, *Fitzpatrick,* 2 F.3d at 1127 n. 17; *Treadwell v. Alexander,* 707 F.2d 473, 475 (11th Cir.1983), as noted above, the defendants have presented evidence that Ethridge was reasonably accommodated in his efforts to perform the Weaver stance; Ethridge—claiming only that he was not reasonably accommodated in his request to shoot one-handed—has presented no evidence that he was not reasonably accommodated when attempting to shoot in the Weaver stance. The defendants, therefore, have successfully shown that no genuine issue of material fact exists as to reasonable accommodation. *See Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir.1991) ("As the City has produced evidence showing that it could not reasonably accommodate [plain-

tiff's] disease, [plaintiff] must present evidence that accommodation is feasible in order to survive the City's motion for summary judgment").

20. Because the court concludes that the Weaver stance is an essential function which Ethridge cannot perform even with reasonable accommodation, it need not determine whether such accommodation would be an "undue hardship" on the defendants. 42 U.S.C.A. § 12111(10). Even were the Weaver stance not an essential function, the court would conclude that it would be an undue hardship on the defendants to have to employ a police officer who could not safely use a firearm. Ethridge has presented no evidence to show that he could safely perform as a police officer without carrying a firearm.

In sum, the court concludes that Ethridge is unable to pass the required handgun course, even when permitted the reasonable accommodation of shooting with one hand. Moreover, the defendants need not even have accommodated Ethridge in this manner because it is undisputed both that the Weaver stance is an essential function and that Ethridge cannot shoot safely in that position.[21]

### c. Dismissal Before Night Test

The court now turns to Ethridge's third assertion that he was treated discriminatorily because he was dismissed from the program before the night shooting test. The court concludes that the state defendants' dismissal of Ethridge prior to the night shooting test, although properly considered disparate treatment, is justified by undisputed evidence. It is a defense to a charge of disparate treatment that "the challenged action is justified by a legitimate, nondiscriminatory reason." 29 C.F.R. § 1630.15. The state defendants argue that Ethridge was not permitted to take the night test because he would have been a danger to himself and others and they have submitted the testimony of several instructors and students to support this claim. In addition to the fact that Ethridge never scored above a 62 in his practice and for-the-record tests, the defendants have offered the testimony of Bob Patterson—who, in addition to being an instructor at the Police Academy, has significant law enforcement and firearms experience—to show that Ethridge did not perform safely during the handgun course. Patterson observed that:

"Mr. Ethridge had a great deal of difficulty in safely loading his weapon, unloading his weapon, clearing jammed ammunition from his weapon, and pulling the slide back on his weapon to chamber a round without holding his weapon under one arm and using the other hand to insert the magazine or pull the slide back. When he did this the plaintiff's weapon was either pointing at his own body or at people on either side of him. Neither situation is safe.... When Mr. Ethridge was firing unsupported with his weak hand at the five (5) yard line, he did not have safe control of his weapon. It looked like the recoil was going to take the weapon out of his hand. If the plaintiff lost control of his weapon and it hit the ground, it could fire, with great potential for injuring persons on the firing range. That is a risk we as firearms instructors can not take."

Patterson affidavit at 3–4.[22] At one point, according to a student shooting three feet away from Ethridge, "the recoil appeared to pull [Ethridge's] right hand to the left and a bullet hit the ground approximately five (5) feet in front of me and slightly to my left."[23] With regard to the decision to dismiss Ethridge from the course prior to the night test, Patterson further stated:

"I concur with Van Davis' assessment that the plaintiff could not safely complete the night firing exercise with his handgun nor could the plaintiff safely complete the shotgun exercise. He could not maintain safe control over his handgun with both hands in the daylight. I do not feel that he could safely hold his handgun in one hand, a flashlight in the other and hit the target in a safe manner."

*Id.* at 6.

The court concludes that the dismissal of Ethridge from the Academy prior to the night shooting test was justified by the "legitimate, nondiscriminatory reason" that he

**21.** As the Eleventh Circuit wrote in *Fitzpatrick,* an

"employer defendant is entitled to prevail on a reasonable accommodation claim where there exists no reasonable accommodation by which the employee plaintiff would be able to perform the essential functions of the job. A defendant is thus entitled to summary judgment on a ... reasonable accommodation claim where there exists no genuine issue with respect to the availability of reasonable accommodation."

2 F.3d at 1126. *See also Jackson v. Veterans Admin.,* 22 F.3d 277, 279–80 (11th Cir.1994).

**22.** *See also* Merida affidavit at 1–2 ("When the plaintiff put a clip in his weapon he would lean sideways to his right in order to jam the clip in and chamber a round. At that point the weapon would be pointing at the head and shoulder area of the person directly to Mr. Ethridge's left."); Cowan affidavit at 2; Carter affidavit at 2.

**23.** Wood affidavit at 2.

was a danger to himself and others. The defendants' evidence showing Ethridge's unsafe shooting practices *during* the handgun course is undisputed, and, indeed, overwhelming. Ethridge has presented no evidence that he was shooting safely during the handgun course—not even an affidavit from a fellow student—or that he could safely have completed the *night* firing test. Ethridge has presented the testimony of a private investigator, who appears to have had no police training, that he observed Ethridge shooting at another range. Although the investigator testified that Ethridge could shoot safely on a firing range, he did not test Ethridge's shooting ability at the same distances required at the Academy range. Moreover, the investigator offered no testimony to dispute the Academy director's conclusion that Ethridge could not shoot safely at night. Ethridge has also presented testimony from the Town of Slocomb's police chief that he accompanied Ethridge to the "Ammo Shop" where Ethridge scored above a 70 on a firearms test. This testimony does not raise a factual dispute for several reasons. First, no certified firearms instructor was present during the Ammo Shop test. Second, there is no evidence in the record to show that the Ammo Shop range was similar to or tested the same skills as the Academy range. Finally, the Ammo Shop test has no bearing on whether Ethridge could shoot safely at night.

The evidence offered by Ethridge in no way contradicts the abundant testimony offered by the defendants to show that Ethridge could not shoot safely during the Police Academy's handgun course in April 1992, under controlled conditions and distances and when monitored and timed by a certified firearms instructor, and that he would be a danger to himself and others if permitted to shoot at night. Even if the court were fully to credit the investigator's testimony and the Ammo Shop test, this evidence has no bearing on the state defendants' decision to dismiss Ethridge in April 1992 for safety reasons.[24] The court concludes, therefore, that there is no genuine dispute but that any disparate treatment of Ethridge by the state defendants was for a legitimate, nondiscriminatory reason and therefore not violative of the ADA.

Thus, Ethridge has failed to create any disputed issues of material fact regarding his claims that he was treated harshly and not reasonably accommodated during his attempts to qualify, that the defendants failed to provide reasonable accommodation when they required him to shoot in the Weaver stance, and that he was dismissed from the course by the defendants for discriminatory reasons. It is therefore undisputed that Ethridge did not and cannot successfully complete the Standards and Training Commission's handgun qualification course and cannot therefore successfully complete the 240 hours of police training required by 1975 Ala.Code § 36–21–46(a)(3).

### 2. Whether Ethridge is Otherwise Qualified

■ Having rejected Ethridge's claims of discriminatory conduct during the training course, the court must now review Ethridge's contention that his actual termination by the Slocomb defendants violated the ADA. The Slocomb defendants state that they are not liable as a matter of law under the ADA because Ethridge is not a "qualified individual with a disability." In deciding whether an individual with a disability is qualified, the court must engage in a two-step process. First, the court must determine if the individual "satisfies the requisite skill, experience, education and other job-related requirements of the employment position." 29 C.F.R. § 1630.2(m). Second, if the plaintiff satisfies the first step, the court must determine whether the individual, "with or without reasonable accommodation, can perform the essential functions" of the position. *Id.* A plaintiff must satisfy both steps in order to

---

**24.** The court notes without concluding that there are a number of reasons to doubt the investigator's testimony, including the fact that he works for Ethridge's counsel as a private investigator and that he has at times employed Ethridge to do investigative work. Moreover, although the investigator states that Ethridge's shooting was at all times safe, he admits that "It is frightening, the manner that [Ethridge] has [the pistol]." Transcript of termination hearing of May 26, 1992, at 62.

be deemed a qualified individual with a disability.

■ As an example of the first inquiry, the Equal Employment Opportunity Commission's interpretive guidelines state that "the first step in determining whether an accountant who is paraplegic is qualified for a certified public account (CPA) position is to examine the individual's credentials to determine whether the individual is a licensed CPA." 29 C.F.R. § 1630.2(m), App.A. The guidelines also suggest the following example:

> "[I]f a law firm requires that all incoming lawyers have graduated from an accredited law school and have passed the bar examination, the law firm need not provide an accommodation to an individual with a visual impairment who has not met these selection criteria. That individual is not entitled to a reasonable accommodation because the individual is not 'otherwise qualified' for the position."

29 C.F.R. § 1630.9, App. A. *See also* G. William Davenport, *The Americans with Disabilities Act: An Appraisal of the Major Employment–Related Compliance and Litigation Issues,* 43 Ala.L.Rev. 307, 320–21 (1992). In the instant case, a qualification under Alabama law for all police officers is the completion of an approved course of police training, a qualification not dissimilar to the requirement that an applicant pass the CPA or bar examinations. Ethridge has not completed such training and is not therefore an otherwise qualified individual within the meaning of the ADA.[25]

■ The court further concludes that Ethridge does not satisfy the second step because he is unable to perform the essential functions of a police officer in Alabama even with reasonable accommodation. As the court holds today, it is undisputed that the ability to shoot in the Weaver stance is an essential function for police officers in Alabama and it is further undisputed, and even stipulated by the parties, that Ethridge cannot perform this function. *See School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987) (quoting *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)) (" 'An otherwise qualified person [under the Rehabilitation Act] is one who is able to meet all of a program's requirements in spite of his handicap.' "). Because Ethridge is not a qualified individual with a disability, his termination does not state a claim under the ADA. The defendants, therefore, are entitled to summary judgment on this aspect of Ethridge's federal claim.[26]

### 3. Whether Requirement of Handgun Course is Discriminatory

■ Ethridge also raises a claim that, even if he could not pass the handgun course with reasonable accommodation, the test is itself discriminatory such that he is entitled to relief under the ADA. Ethridge invokes 42 U.S.C.A. § 12112(b)(6), which defines discrimination under the ADA to include,

> "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for

---

**25.** Indeed, under 1975 Ala.Code § 36–21–50, it would have been a misdemeanor violation if the Slocomb defendants had hired Ethridge without his having completed the police training required under § 36–21–46.

**26.** In reaching the conclusion that Ethridge is not otherwise qualified, the court is mindful of the Eleventh Circuit's holding in *Arline v. School Bd. of Nassau County,* 772 F.2d 759 (11th Cir. 1985), *aff'd,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987), that:

> "The court is obligated to scrutinize the evidence before determining whether the defendant's justifications reflect a well-informed

judgment grounded in a careful and open-minded weighing of the risks and alternatives, or whether they are simply conclusory statements that are being used to justify reactions grounded in public prejudice."

*Id.* at 764–65. Here, however, because of Ethridge's failure to present any evidence that creates a disputed issue of material fact, the court is constrained to grant summary judgment in favor of the defendants. This court has been generous in granting counsel for Ethridge extensions of time in which to file his briefs and evidentiary materials. Ethridge's counsel has nonetheless been unable to present any evidence which would preclude summary judgment.

the position in question and is consistent with business necessity."

The defendants bear the burden of proving that the Police Academy's handgun test is job-related and consistent with business necessity. The defendants have come forward with evidence to meet this burden. The handgun course curriculum is established by the Alabama Peace Officers' Standards and Training Commission, a commission created by state law in 1971. 1975 Ala.Code § 36–21–40. The duties of the Commission include:

"(1) To study, obtain data, statistics and information and to make reports concerning the recruitment, selection and training of law enforcement officers in the state and to make recommendations for improvement in methods of recruitment, selection and training of law enforcement officers;

"(2) To review from time to time the minimum standards described in section 36–21–46 for applicants for and appointees as law enforcement officers; [and] . . .

"(4) To study, consider and to make reports from time to time concerning the work and curriculum of and the courses offered by law enforcement training schools in the state. . . ."

1975 Ala.Code § 36–21–45. In approving the Southwest Alabama Police Academy's curriculum, and based on its expertise in this area, the Commission has determined that the handgun qualification course is related to the job of a police officer and necessary for "business" reasons, in this case, to ensure the safety of police officers and the community. The defendants' evidence is therefore sufficient to be considered an "affirmative showing" that there is no genuine issue of material fact, as required when the party moving for summary judgment bears the burden of

proof. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993).

Once again, Ethridge has presented no evidence beyond his bare allegation that the requirement of the handgun course is not job-related and consistent with business necessity. Ethridge has not, therefore, "come forward with evidence sufficient to call into question the inference created by the movant's evidence," *Fitzpatrick,* 2 F.3d at 1116, and summary judgment will be entered against him on this aspect of his federal claim as well. Because the defendants have shown that there are no disputed issues of material fact under any of Ethridge's federal theories and that they are entitled to judgment as a matter of law, summary judgment will be granted in favor of all defendants on the ADA claim.

### C. State Law Claim: § 21–7–8

■ The defendants also seek summary judgment on Ethridge's claims under 1975 Ala.Code § 21–7–8, which declares it to be the policy for political subdivisions of the State of Alabama to employ disabled persons.[27] It is an affirmative defense under that section, however, that the "particular disability prevents the performance of the work involved." Assuming that § 21–7–8 creates a private cause of action, an issue left open by this court in its order of November 15, 1993, *Ethridge v. State of Alabama,* 847 F.Supp. 903, 907–08 (M.D.Ala.1993), the defendants are entitled to summary judgment for the same reasons as under the ADA. On the basis of the record before the court, Ethridge cannot perform the essential functions of a police officer because of his particular disability. Summary judgment, therefore, will be granted in favor of all defendants on Ethridge's state as well as his federal claim.

An appropriate judgment will be entered.

---

27. Section 21–7–8 provides:
"It is the policy of this state that the blind, the visually handicapped and the otherwise physically disabled shall be employed in the state service, the service of the political subdivisions of the state, in the public schools and in all other employment supported in whole or in part by public funds on the same terms and conditions as the able-bodied, unless it is shown that the particular disability prevents the performance of the work involved."

## APPENDIX 1

**Position:** The shooter's strong foot and shoulder are dropped back, similar to the stance used in defensive tactics. The weapon is brought up to eye level and the gun arm can be either straight or slightly bent, but should not be locked. The shooter can stand upright, crouch, or drop to a kneeling or barricaded position.