660 So.2d 1124 (1995)
STATE of Florida, DEPARTMENT OF REVENUE, Appellant,
v.
KEMPER INVESTORS LIFE INSURANCE COMPANY, an Illinois Corporation, Appellee.
No. 94-1355.
District Court of Appeal of Florida, First District.
September 5, 1995.
*1125 Robert A. Butterworth, Attorney General, and Jeffrey M. Dikman, Assistant Attorney General, Tallahassee, for Appellant.
Robert T. Hyde, Jr., of Rogers Towers Bailey Jones & Gay, Jacksonville, for Appellee.
SMITH, Senior Judge.
The Department of Revenue (the Department, or DOR) appeals from that portion of a final summary judgment entered in favor of Kemper Investors Life Insurance Company (Kemper) finding that Kemper was entitled to a tax refund. Kemper, in turn, cross-appeals that portion of the final judgment ruling that it was not entitled to a refund of its payment of interest on an earlier assessed tax deficiency. For the following reasons, we affirm on appeal but reverse on the cross-appeal.
The undisputed facts show that on May 4, 1992, Kemper filed its original complaint pursuant to section 72.011, Florida Statutes (1991), contesting the legality of a tax assessment and concurrent denial of tax credit by the Department. The Department's assessments related to Kemper's underpayment of chapter 220 corporate income taxes and chapter 221 emergency excise taxes, which was discovered during a 1991 audit conducted by the Department of Kemper's calendar income tax years 1984-1988. The Department agreed that the underpayment resulted from a good faith error, and no penalties were assessed. Kemper did not challenge the correctness of the assessment insofar as it found an underpayment of chapter 220 and 221 taxes. However, Kemper opposed the assessment on the theory that it had overpaid chapter 624 insurance premium taxes, contending that the additional corporate income and emergency excise taxes owed for the tax years 1984-1987 pursuant to the audit should be considered offset by Kemper's payment of the identical amounts as insurance premium taxes for the corresponding years 1985-1988 pursuant to section 624.509(4), Florida Statutes (1991).
The Department moved to dismiss the original complaint for lack of jurisdiction and for failure to state a cause of action, asserting *1126 that because the underlying audit adjustments were uncontested, the assessment must be paid as an uncontested sum pursuant to section 72.011(3)(a), Florida Statutes. The Department argued before the trial court that unless Kemper complied with the statutory procedures for claiming a refund, Kemper had no standing and the court was without jurisdiction to rule on the challenge to the assessment. As to the alleged insurance premium tax overpayment, which Kemper sought to offset against the deficiencies revealed by the audit, the Department asserted that any refund application would first require the timely filing of a refund claim.
After a hearing, the trial court on September 14, 1992 entered an interlocutory order abating the action and allowing Kemper to file a tax refund claim within 30 days of the court's order. The order further provided that upon Kemper's failure to file its claim, the cause of action would stand dismissed. The Department was ordered to make an expedited determination on the refund claim, and Kemper was allowed 20 days from receipt of a refund denial notification to amend its complaint and contest the denial of the refund claim.
In accordance with the court's order, to avoid dismissal of its action, Kemper filed its insurance premium tax refund claim on October 6, 1992. On the same date Kemper paid the assessed corporate income and emergency excise taxes, in the amount of $255,666, as well as interest in the amount of $173,646.44.
When the Department ultimately denied the refund claim, Kemper filed an amended complaint and the parties later filed cross motions for summary judgment, and a stipulation as to the facts to be considered by the court in ruling on the summary judgment motions. The court thereafter entered a summary final judgment on March 29, 1994, granting Kemper's motion for summary judgment in part and denying it in part. In granting the motion in part, the court found Kemper was entitled to the claimed tax credit against its 1985-1988 insurance premium taxes, including the $255,666 paid on October 6, 1992. The court specifically found that Kemper had overpaid its insurance premium taxes for the years 1985-1988 in the sum of $255,666. However, the court also ruled that Kemper was not entitled to a refund of the $173,646.44 interest payment.
The Department frames the issue on appeal in accord with its arguments which were rejected by the court below. Here, as below, DOR asserts that the issue on appeal is whether Kemper's October 6, 1992, payment of corporate income and emergency excise taxes gave rise to a credit within the contemplation of section 624.509(4), Florida Statutes (1991), to be applied retroactively against Kemper's insurance premium taxes paid for the corresponding tax years 1985-1988. Kemper's arguments, on the other hand, in essence raise the question whether the audit and assessment in 1991 can lawfully support the collection of additional tax monies from Kemper when it is undisputed that the deficiency in payment of chapter 220 and 221 taxes was offset dollar for dollar by a corresponding increase in payment of Kemper's insurance premium taxes during the appropriate years.
Section 624.509(4) provides in relevant part as follows:
The ... income tax imposed under chapter 220, and the emergency excise tax imposed under chapter 221, which are paid by any insurer shall be credited against, and to the extent thereof shall discharge, the liability for tax imposed by this section for the annual period in which such tax payments are made.

(Emphasis added.) The Department argues that the language of section 624.509(4) is plain and unambiguous, and as applied to the undisputed facts of the instant case, means that Kemper could only take the credit for the payment of additional corporate income and emergency excise taxes in 1992, the year "in which" the additional taxes were paid pursuant to the trial court's order. Thus, the Department reasons, Kemper was not entitled to "carry back" the credit to its 1985-1988 insurance premium tax years so as to generate a refund claim. In ruling as it did, DOR maintains, the trial court erred by not giving effect to the plain language of the statute, citing State v. Egan, 287 So.2d 1 (Fla. 1973).
*1127 In order to fully appreciate the consequences to the taxpayer of the Department's position in this case, it is necessary to examine certain stipulated facts in more detail. Kemper filed corporate income and emergency excise returns and paid the taxes shown due by these returns for the years 1984-1987, inclusive. Kemper also filed its insurance premium tax returns for the years 1985-1988, inclusive, and paid the taxes shown due by these returns, after taking credit under section 624.509 for the corporate income and emergency excise taxes due for the years above stated. The stipulation of facts filed below by the parties contains a year-by-year breakdown of the amount of each tax paid for the years 1984-1988. The total amount of these payments, in the aggregate, is $991,561. If Kemper had paid the additional corporate income and excise taxes found due by the 1991 audit, in the years in which such taxes were due, Kemper's tax liability for the three taxes  corporate income, excise, and insurance premium  in the aggregate, would have been $991,561, which is the exact amount Kemper actually paid during the years in question. As a result of the trial court's order, entered at the insistence of the Department, Kemper on October 6, 1991 paid $255,666, representing the deficiency in corporate income and excise taxes revealed by the audit, and in addition, paid $173,646.44 as interest due on the tax deficiencies. Thus, Kemper paid $1,420,873.44 to the state, while the correct amount of Kemper's tax liability for the three taxes, in the aggregate, was the amount Kemper actually paid  $991,561.
The consequences of the Department's assessment can only be described as bizarre. One paragraph from DOR's initial brief candidly and succinctly sums up the facts we have outlined above:
Looking at Chapter 220 & 221 taxes originally paid for the calendar tax years ending 1984-1987, together with insurance premium tax paid for the calendar years ending 1985-1988 "in the aggregate", DOR would have received no greater combined tax payments if Kemper had originally paid the correct amount of Chapter 220 & 221 tax. (record cite omitted) This is because, for every additional dollar in Chapter 220 & 221 tax which would have been correctly paid, a dollar for dollar credit could have been taken, in that year of payment, against insurance premium tax.
Nevertheless, the Department asserts that the above facts are immaterial and irrelevant.[1] It argues, as it did below, that notwithstanding the state's receipt of the exact dollar amount it would have received from Kemper had Kemper's corporate income and excise tax returns been correct, the excess insurance premium tax paid by Kemper, which made up for the deficiency in the income and excise deficiencies, was not an "overpayment", but was in fact the "correct" amount.[2]
The Department urges the application of familiar rules of statutory construction, reminding this court that effect must be given to the "plain language" of a statute; that taxation statutes are construed in favor of the taxpayer; and that tax exemption and tax credit statutes are strictly construed against the taxpayer and in favor of the taxing authority. We fully subscribe to these principles. We also are cognizant of the equally compelling and fundamental rule that legislative intent must be the polestar by which the court must be guided, and that this intent must be given effect even if it may contradict the strict letter of a statute; and that a construction of a statute that would lead to an absurd or unreasonable result or *1128 render a statute purposeless should be avoided. State v. Webb, 398 So.2d 820 (Fla. 1981). The legislative intent must be given effect even when it may appear to contradict settled rules of construction; the primary purpose designated should determine the force and effect of the words used, and no literal interpretation should be given that leads to an unreasonable or ridiculous conclusion or a purpose not intended by the legislature. See, Smith v. Ryan, 39 So.2d 281 (Fla. 1949), and cases therein cited.
The obvious legislative policy and intent behind the credit provision of section 624.509 is that to the extent an insurance corporation pays corporate income and emergency excise taxes it is not required to pay insurance premium taxes. To apply the literal language of the statute as appellant urges does not in any way further the legislative policy or intent, but instead produces consequences having no connection with the purposes of the statute. This is made evident in this case by the Department's attempt to carry forward the credit provision, with no express mandate to do so in connection with an audit and assessment, to a year having no relationship to the business, economic, or other activity of the taxpayer that generated the tax liability in the first instance. This factor alone distinguishes this case from authorities relied upon by the Department. In National Brands Tire Co., Inc., v. Dept. of Revenue, 383 So.2d 257 (Fla. 3d DCA 1980), a taxpayer was denied credit against sales tax which it attempted to take for tax paid on worthless accounts charged off for federal income tax purposes in prior years, where the statute provided that such credit could be taken only for accounts charged off for federal income tax purposes during the period covered by the current return. In Estate of W.T. Grant v. Lewis, 358 So.2d 76 (Fla. 1st DCA 1978), a taxpayer sought a refund of sales tax paid on accounts later determined to be worthless and charged off for federal income tax purposes. The refund was denied because the statute only provided for a credit against future taxes on future sales, and did not provide for a refund; and further, because the taxpayer went bankrupt there were no future sales or tax returns against which the previously paid taxes could apply. In State Department of Revenue v. McCoy Motel, Inc., 302 So.2d 440 (Fla.1st DCA 1974), this court held that a taxpayer owed documentary stamps on the full amount shown on the face of a promissory note secured by a "wrap around" mortgage, rather than the difference between that promissory note and an earlier note secured by the same mortgage, notwithstanding the fact that the taxpayer might have owed less tax if it had structured the transaction differently.
Significantly, none of the foregoing cases involve the overpayment or underpayment of off-setting taxes payable to the same taxing authority. In each case the taxpayer sought an advantage not contemplated by the language of the statutes or reasonably related to the purposes and policies for their enactment.
Of particular note is the observation of the court in National Brands, commenting that the taxpayer's view would allow it to claim the tax credit at any subsequent time, no matter how long afterward it might choose: "This reading of the statute would render its timing provisions meaningless and superfluous, and is therefore not an acceptable one." 383 So.2d at 259. In the case before us, the Department's view allows the tax credit provision to be shifted forward without any logical reason to justify it, only a literal interpretation of the words "in which." Thus, the Department's view would allow it to shift the credit forward to a year fortuitously dictated by the Department's auditing activity, which could occur in any one of the five or more years allotted to the Department within which to conduct an audit and levy an assessment. Section 95.091, Florida Statutes. The ability of the taxpayer to avail itself of the tax benefit intended by the Legislature would be controlled solely by whim or chance, and not based upon any reasoned application of the tax law. The incongruity of the Department's position is apparent when it is considered that while the Department has five or more years to audit and assess, the taxpayer has only three years within which to seek a refund. Section *1129 215.26, Florida Statutes.[3]
The Department's arguments suggest that the substantial forfeiture of money it attempts to impose on the taxpayer in these proceedings is simply the price to be paid by a taxpayer who files an incorrect return. However, we are of the view that the tax laws contain ample provisions for penalties and interest for taxpayer's errors and omissions, and it is not the province of the Department to create additional penalties and forfeitures for the taxpayer, or windfalls for the state.
As we view the statute, and so, apparently, as did the trial judge, there is a logical and rational interpretation of section 624.509(4) that satisfies the obvious legislative intent, caused no loss of revenue for the state, creates no windfall for the state, and avoids an unintended forfeiture of funds for a taxpayer acting in good faith. That interpretation, which was advanced by Kemper below as well as on appeal, is that the statute prescribes a methodology for the year-by-year computation of the insurance premium tax, and does not purport to deal with credit carry-back or carry-forward issues. The words "in which", the meaning of which is the key to this controversy, should therefore be interpreted and applied as referring to the year in which the tax-paying events occur according the time scheduled for their occurrence in the ordinary course of events. There is simply no justification for the Department's attempt to read into the statute provisions dealing with the overpayment or underpayment of any of the three taxes mentioned, and its attempt to do so, in our judgment leads to an absurd and unreasonable result.
One aspect of this case that has not been satisfactorily explained is the Department's "piecemeal" audit of Kemper's corporate income and emergency excise tax returns without an audit of the alternative and inter-related insurance premium tax returns. So far as we have determined, no statute, department rule, or ordinary accounting principles requires a partial audit such as occurred in this case.[4] In fact, such a procedure appears to be at odds with the legislation discussed below.
The most recent expression of the Legislature in regard to the Department's audit and assessment procedures strongly undermines the Department's position in this case. Section 213.34(4), Florida Statutes (Supp. 1992), provides as follows:
213.34 Authority to audit.
(4) Notwithstanding the provisions of s. 215.26, the department shall offset the overpayment of any tax during an audit period against a deficiency of any tax, penalty, or interest determined to be due during the same audit period.
As shown above, section 213.34 specifically states that the Department shall offset the overpayment of any tax during an audit period against a deficiency of any tax determined to be due during the same audit period.[5]
Here, although there was no audit of an alleged overpayment of insurance premium taxes in the audit period under review, *1130 we are of the view that this omission works against the Department, rather than against the taxpayer. By reference to section 215.26, the language of section 213.34(4) appears to place a responsibility upon the state, through its departments and officials, correctly and timely to determine the tax burden falling upon the taxpayer, over and above its responsibilities in merely responding to claims for a refund. We view these amendments as remedial legislation, and therefore applicable to the resolution of the case before us. See, Arrow Air, Inc. v. Walsh, 645 So.2d 422, 424 (Fla. 1994); Walker & LaBerge, Inc. v. Halligan, 344 So.2d 239, 241-242 (Fla. 1977).
Reading section 213.34(4) in pari materia with section 624.509(4) and the refund provisions to which section 213.34(4) refers, in the light of the principles stated and the arguments and contentions discussed above, leads us to conclude that the Department was not authorized to create a tax deficiency and levy an assessment upon Kemper based upon a partial audit of Kemper's chapters 220, 221, and 624 tax returns. Accordingly, we hold that the trial court correctly ordered a refund to Kemper of the sum of $255,666. While under our view the trial court should have simply voided the assessment of chapter 220 and 221 tax deficiencies in accordance with Kemper's initial pleading, we reach the same result as the trial court did and therefore affirm that portion of the judgment below ordering a refund to Kemper.
Kemper raises on cross-appeal the issue of whether the trial court erred in awarding the Department the interest paid by Kemper on October 6, 1992. In accord with our reasons for affirmance of the trial court's order for a refund as above stated we hold that it was error for the trial court to deny Kemper's claim for refund of the interest payment of $176,646.44. Since under our ruling there was no valid assessment for a deficiency, it follows that no interest was owed.
The judgment of the court below is AFFIRMED as to the issue on appeal; and the final judgment is REVERSED as to the issue on cross-appeal, and the cause is remanded for entry of an amended judgment consistent with this opinion.
ALLEN and DAVIS, JJ., concur.
NOTES
[1] DOR also admits but dismisses as immaterial and irrelevant the fact that taking a credit against 1992 insurance premium taxes will not benefit Kemper in that, although Kemper's 1992 insurance premium tax return has not been audited by DOR, it appears from the face of the return that Kemper will not have sufficient premium tax liability to absorb the credit for the additional chapter 220 and 221 taxes assessed by DOR.
[2] A logical extension of DOR's reasoning is that once insurance premium taxes are paid based upon an undercalculation of corporate income and emergency excise taxes, the premium tax remains forever paid, and is not subject to refund.
[3] It is noted that the Department asserted the statute of limitations defense in its pleadings filed below. Discussion of this defense is noticeably absent from its briefs and argument in this court.
[4] We have not overlooked DOR's reliance upon Opinion of the Attorney General, 82-67 (1982) which contains language appearing to support its interpretation of section 624.509(4). However, the opinion does not deal with facts analogous to those in the case before us and is therefore of limited assistance in resolving this case. DOR also relies upon Financial Guaranty Insurance Company v. Dept. of Revenue, 589 So.2d 295 (Fla. 1st DCA 1991). This case was a "Per Curiam, Affirmed", without opinion, and is therefore of no precedential authority. Department of Legal Affairs v. District Court of Appeal, 434 So.2d 310 (Fla. 1983). Moreover, both the Attorney General's Opinion and the Financial Guaranty decision predated the legislative changes discussed in this opinion.
[5] This 1992 amendment, enacted as a part of the "Taxpayer's Bill of Rights," became effective six days prior to Kemper's payment of October 6, 1992, and long before the final summary judgment was rendered. DOR argues that this provision was not in effect when the trial court ordered Kemper to file for a refund, and even if it had been in effect, it would not have changed the requirement for Kemper to take credit for its 1992 payment in 1992. In the final analysis, DOR offers no explanation as to the meaning or operation of this amendment.