Dear Mr. Goren:
On behalf of the North Broward Hospital District, you have asked for my opinion on the following questions:
1. How are the members of the North Broward Hospital District's Board of Commissioners able to exercise their "charter oversight duties," if at all, given the "explicit segregation of duties between the functions of operational management of the district and oversight by the board," as stated in the district charter, as amended?
2. Are the board members of the North Broward Hospital District permitted to utilize their prerogative to give direction to or interfere with employees, officers, or agents under the direct or indirect supervision of the district's President/CEO for the limited purpose of "inquiry or information" as individuals, or must they exercise such option as a whole collegial body?
3. Since violations of the non-interference provision of the 2007 act specifically constitute "malfeasance within the meaning of Article IV, s. 7(a) of the Florida Constitution," how is this section to be enforced and what are the penalties for violations thereof?
In sum:
1. The Legislature has expressed its intent that members of the board of commissioners refrain from operating in a management role while also performing charter oversight duties in what appears to be policy language in section 5(2), Chapter 2007-299, Laws of Florida. In the directory language of the amendment, members of the board are required to refrain from giving direction to or interfering with employees or others under the supervision of the President/CEO, with the exception of inquiry and information gathering.
2. An individual member of the board of commissioners of the North Broward Hospital District may ask questions or request information of district employees, agents, and officers who are supervised, directly or indirectly, by the President/CEO of the district, but may not otherwise give direction to or interfere with any such employee.
3. The provisions of section 5(2) of the charter specifically make a violation of the "non-interference" clause an occasion of malfeasance within the meaning of Article IV, section 7(a) of the Florida Constitution. The constitutional provision must be read together with the statutory implementation language set forth in Part V, Chapter 112, Florida Statutes, which sets forth the procedure for disposition of an order of suspension by the Governor.
The North Broward Hospital District (the "district") is an independent special taxing district created in 1951 by chapter 27438, Laws of Florida, to meet the health care needs of the people of the district.[1] The district is governed by a seven member board of commissioners (the "board") appointed by the Governor.[2] The enabling legislation for the district and subsequent amendments were recently recodified in Chapter 2006-347, Laws of Florida, which is the district's charter. In 2007, the charter was amended to include a "non-interference" provision and to require that the board adopt a code of conduct and ethics.[3] As provided in the district's bylaws:
"The Board shall guide the North Broward Hospital District and all of its facilities, common divisions and wholly owned entities toward the efficient and effective provision of quality health care, education and research. The powers of the Board of Commissioners shall be employed so as to ensure that the welfare and health of the patients and the best interests of the hospitals and facilities of the District are at all times served."[4]
You have requested this office's assistance in determining how the board of commissioners of the North Broward Hospital District may comply with the legislative directive expressed in section 5(2), Chapter 2007-299, Laws of Florida, which provides:
"It is the finding of the Legislature that it is not in the public interest for any member of the board of commissioners to operate in the perceived role of management while simultaneously exercising thecharter oversight duties contemplated by creation of this special act. It is therefore the intent of the Legislature that the board of commissioners only exercise its oversight function as a whole body and not through the actions of any individual commissioner. It is also the intent of the Legislature that there be an explicit segregation of duties between the functions of operational management of the district and oversight by the board of commissioners. Except for the purposes of inquiry or information, a member of the board of commissioners shall not give direction to or interfere with any employee, officer, or agent under the direct or indirect supervision of the President/CEO. Such action shall be malfeasance within the meaning of Art. IV, s. 7(a) of the Florida Constitution. Nothing contained herein shall prevent a commissioner from referring a citizen complaint to the President/CEO or to the board of commissioners or providing information about any issue to the President/CEO or to the board of commissioners." (e.s.)
Question One
This office is authorized to provide legal opinions on questions of state law; we have no authority to provide district boards or commissions with detailed suggestions as to how they may accomplish the work of the district for which they were appointed. As such, I must advise you that this office cannot direct how members of the board of the North Broward Hospital District should accomplish their duties.
Your first question relates to the scope of the oversight duties of the North Broward Hospital District's board of commissioners as limited by Chapter 2007-299, Laws of Florida. The language of section 5(2), Chapter 2007-299, Laws of Florida, which has prompted your question appears to be language reflecting the intent of the Legislature rather than language directing the board to perform some action:
"It is the finding of the Legislature that it is not in the public interest for any member of the board of commissioners to operate in the perceived role of management while simultaneously exercising the charter oversight duties contemplated by creation of this special act.It is therefore the intent of the Legislature that the board of commissioners only exercise its oversight function as a whole body and not through the actions of any individual commissioner. It is also theintent of the Legislature that there be an explicit segregation of duties between the functions of operational management of the district and oversight by the board of commissioners." (e.s.)
As demonstrated above, these sentences are phrased in terms of legislative findings and intent, but these statements do not require any particular action by the board or provide any direction as to how such action should be accomplished.[5] The operative provision is the sentence stating that "[e]xcept for the purposes of inquiry or information, a member of the board of commissioners shall not give direction to or interfere with any employee. . . ." It is through this provision that the Legislature chose to accomplish its stated intent of separating the management and oversight of the district.[6]
Question Two
Your second question requires consideration of the language of the 2007 amendment of the charter/special act which provides:
"It is . . . the intent of the Legislature that the board of commissioners only exercise its oversight function as a whole body and not through the actions of any individual commissioner. . . . Except for the purposes of inquiry or information, a member of the board of commissioners shall not give direction to or interfere with any employee, officer, or agent under the direct or indirect supervision of the President/CEO."[7]
Concerns have been expressed that this language would restrict the ability of individual board members to directly engage district staff working under the supervision of the President/CEO for purposes of inquiry or for informational purposes.
While this office recognizes that section 5(2), Chapter 2007-299, Laws of Florida, provides that "the board of commissioners [should] only exercise its oversight function as a whole body and not through the actions of any individual commissioner[,]" the act also specifically authorizes individual members of the board to give direction to district employees within the supervision of the President/CEO for purposes of inquiry and information seeking. As discussed more fully in my response to Question One, the legislative intent/policy language suggesting that the oversight function of the board should only be exercised "as a whole body" is not expressed in terms requiring particular action by the board. Rather, this language appears to constitute a statement of intent by the Legislature as to the purpose and construction of the operative provisions of the 2007 legislation that an individual member may not direct or interfere with these employees except for inquiry and information purposes.
The charter clearly gives individual members of the board the authority to ask questions or request information from staff of the district or others who may come within the supervisory authority of the President/CEO. Members of the board may not otherwise, without committing malfeasance, give directions to or interfere with these employees of the district. This legislative prohibition would appear to be directed toward the "functions of operational management" mentioned elsewhere in section 5, Chapter 2007-299, Laws of Florida. Thus, in order to accomplish the legislatively declared object of segregating the oversight function from the operational management of the district, these provisions should be read together and harmonized.[8] Further, courts are bound to ascribe reasonableness to the intention of the Legislature and a reasoned construction to its enactments.[9] Staff analysis for the 2007 legislation appears to support this reading of the act and states that "[a] board member that gives direction or interferes with any employee under the supervision of the President/CEO, except for inquiry, will have conducted malfeasance. . . ."[10]
Therefore, it is my opinion that an individual member of the board of commissioners of the North Broward Hospital District may directly ask questions or request information of district employees, agents, and officers who are supervised, directly or indirectly, by the President/CEO of the district. In asking questions or seeking information, the board members need not act as a collegial body. However, section 5, Chapter 2007-299, Laws of Florida, makes clear the Legislature's intent that no individual member of the board may give direction to or interfere with any such employee outside the scope of inquiry and information seeking without violating the charter.
Question Three
Finally, you have asked for direction in determining enforcement options and penalties for violations of section 5(2) of the charter. The language of the special act specifically provides that violations of this section "shall be malfeasance within the meaning of Art. IV, s. 7(a) of the Florida Constitution."
Article IV, section 7 of the Florida Constitution provides for suspensions by the Governor and filling of any vacancy created by such a suspension:
"(a) By executive order stating the grounds and filed with the custodian of state records, the governor may suspend from office any state officer not subject to impeachment, any officer of the militia not in the active service of the United States, or any county officer, for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony, and may fill the office by appointment for the period of suspension. The suspended officer may at any time before removal be reinstated by the governor."
If the officer is not reinstated by the Governor, the Senate may remove him or her from office or reinstate the suspended official.[11] The provisions of Part V, Chapter 112, Florida Statutes, set forth procedures for the disposition of the order of suspension by the Governor implementing the constitutional provision[12] and specifying such matters as the contents of such a suspension order[13]
and the prosecution of the suspension before the Senate.[14]
Moreover, Article I, section 18, Florida Constitution, provides that "[n]o administrative agency . . . shall impose a sentence of imprisonment, nor shall it impose any other penalty except as provided by law." As the court recognized in Broward County v.La Rosa, [15] the phrase "by law" contemplates an enactment of the Legislature.[16] Thus, the district, as an administrative agency, [17] has no authority to prescribe penalties for violations of its charter except those the Legislature has adopted. Section 5, Chapter 2007-299, Laws of Florida, contains no other provision for penalties or enforcement for violations of the "non-interference" provision.[18]
In sum, it is my opinion that the provisions of section 5(2) of the charter specifically make violation of the "non-interference" clause an occasion of malfeasance within the meaning of Article IV, section 7(a) of the Florida Constitution. The constitutional provision must be read together with the statutory implementation language set forth in Part V, Chapter 112, Florida Statutes, which provides the procedure for disposition of an order of suspension by the Governor.
Sincerely,
 Pam Bondi Attorney General
PB/tgh
[1] See s. 3, Ch. 2006-347 and s. 1, Ch. 2007-299, Laws of Fla.
[2] See s. 3, Ch. 2006-347, Laws of Fla.; Art. I, s. 1-2, Bylaws of the North Broward Hospital District and Broward General Medical Center, North Broward Medical Center, Imperial Point Medical Center, Coral Springs Medical Center.
[3] This office is aware that the district's bylaws were last revised in 1991. See Bylaws of the North Broward Hospital District, Editor's note, p. 37. The board may wish to update the district's bylaws to reflect the more recent legislative directives considered herein and more fully delineate the operational management duties and charter oversight duties of the President/CEO and the board. This office has no information regarding the situation existing in the district which gave rise to the adoption of Ch. 2007-299, Laws of Fla., which could provide guidance, but would suggest that some investigation into the situation surrounding the amendments could be helpful in effectuating the legislative intent expressed in the act.See, e.g., Singleton v. Larson, 46 So. 2d 186 (Fla. 1950) (in construing a statute, court will consider its history, evil to be corrected, intention of Legislature, subject to be regulated, objects to be obtained and will be guided by legislative intent); State v.Webb, 398 So. 2d 820 (Fla. 1981); State v. Anderson,764 So. 2d 848 (Fla. 3d DCA 2000).
[4] Art. I, s. I-4, Bylaws supra.
[5] See Bledsoe v. Palm Beach Soil and Water ConservationDist., 942 F.Supp. 1439, reversed 133 F.3d 816, rehearing andsuggestion for rehearing denied, 140 F.3d 1044, certioraridenied, 119 S.Ct. 72, 525 U.S. 826, 142 L. Ed. 2d 57 (in ascertaining plain meaning of statute, court should look not only to discrete portion of statute at issue, but to design of statute as whole and to its object and policy).
[6] Cassoutt v. Cessna Aircraft Co.,742 So. 2d 493 (Fla. 1st DCA 1999) (When construing a statutory provision, court is guided by the rule that the intent of the Legislature is the overriding consideration.); State, Dept. ofRevenue v. Kemper Investors Life Ins. Co.,660 So. 2d 1124 (Fla. 1st DCA 1995) (When construing statutes, primary purpose designated should determine force and effect of words used, and no literal interpretation should be given that leads to unreasonable ridiculous conclusion or purpose not intended by Legislature.).
[7] Section 5, Ch. 2007-299, Laws of Fla.
[8] See Ideal Farms Drainage District v. Certain Lands,19 So. 2d 234 (Fla. 1944); Forsythe v. Longboat Key Beach ErosionControl District, 604 So. 2d 452 (Fla. 1992) (all parts of a statute must be read together in order to achieve a consistent whole);State v. Haddock, 140 So. 2d 631 (Fla. 1st DCA 1962).
[9] City of Boca Raton v. Gidman, 440 So. 2d 1277 (Fla. 1983);Wakulla County v. Davis, 395 So. 2d 540 (Fla. 1981); City ofDania v. Hertz Corporation; 518 So. 2d 1387 (Fla. 4th DCA 1988).
[10] See House of Representatives Local Bill Staff Analysis, CS/HB 1391, p. 2, dated April 11, 2007.
[11] Section 7(b), Art. IV, Fla. Const.
[12] Section 112.40, Fla. Stat.
[13] Section 112.41, Fla. Stat.
[14] Section 112.43, Fla. Stat.
[15] 484 So. 2d 1374 (Fla. 4th DCA 1986). And see Broward County v.Plantation Imports, Inc., infra, in which the court struck down a provision of the Broward County Consumer Protection Code which authorized the county Consumer Protection Board to determine if there were violations of the Code and impose civil penalties for violation of any cease and desist orders. The court held the provision authorizing an administrative agency to impose a penalty, without such authority being provided by legislative act, was unconstitutional.
[16] See Grapeland Heights Civic Association v. City of Miami,267 So. 2d 321, 324 (Fla. 1972); Broward County v. Plantation Imports,Inc., 419 So. 2d 1145 (Fla. 4th DCA 1982); Ison v. Zimmerman,372 So. 2d 431 (Fla. 1979); Op. Att'y Gen. Fla. 79-109 (1979).
[17] See, e.g., Ops. Att'y Gen. Fla. 09-53 (2009) (mosquito control district is administrative agency for purposes of Art. I, s. 18, Fla. Const.); 09-29 (2009) (county precluded from adopting ordinance imposing civil penalty); 01-77 (2001) (city code enforcement board may not alter statutory provisions to authorized imposition of fine).
[18] Section 5(3)(a), Ch. 2007-299, Laws of Fla., also makes failure to comply with the provisions of the district's code of conduct "malfeasance within the meaning of Art. IV, s. 7(a) of the Florida Constitution."