**Major ROGERS, Plaintiff,**

v.

**DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and the South Carolina Budget and Control Board, Office of Insurance Services, Defendants.**

No. 7:97–1515–20AK.

United States District Court,
D. South Carolina,
Spartanburg Division.

Dec. 17, 1997.

W. Andrew Arnold, Greenville, SC, Robert E. Hoskins, Greenville, SC, for Plaintiff.

Ashley B. Abel, Spartanburg, SC, for Defendants.

## ORDER

HERLONG, District Judge.

This matter is before the court with the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b) and Local Rule 19.02 DSC. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

### I. STATEMENT OF THE CASE

The plaintiff, Major Rogers ("Rogers"), filed this claim against the defendants under two separate federal acts: (1) title II of the Americans with Disabilities Act ("ADA" or "the Act"), 42 U.S.C. §§ 12131, *et seq.,* and (2) section 504 of the Vocational Rehabilitation Act ("Rehabilitation Act"), 29 U.S.C. § 794.[1] Rogers asserts that the defendants denied him employment benefits because of

---

1. Title II of the ADA effectively extended the applicability of the earlier Rehabilitation Act. While the Rehabilitation Act sought to fight discrimination in public entities that received federal funds, title II extended this to all state and local entities, regardless of funding. *See Bledsoe v. Palm Beach Soil & Water Conserv. Dist.,* 942 F.Supp. 1439, 1446 (S.D.Fla.1996) (detailing legislative history behind title II of the ADA). Due to the similarity in the language of the two statutes, the United States Court of Appeals for the Fourth Circuit applies the same analysis to both. *Doe v. University of Maryland Med. Sys., Corp.,* 50 F.3d 1261, 1264–65 n. 9 (4th Cir.1995).

his mental disability. Specifically, Rogers argues the defendants discriminated against him by arbitrarily providing physically disabled employees with more benefits than those with mental disabilities.

The defendants, the Department of Health and Environmental Control and the South Carolina Budget and Control Board, Office of Insurance Services (collectively, "DHEC"), contend that such a classification is not unlawful discrimination. Accordingly, DHEC filed a motion to dismiss the complaint. In his Report and Recommendation, United States Magistrate Judge William M. Catoe, Jr. recommends that the court grant the defendants' motion. For the reasons set forth below, the court agrees with the magistrate judge's recommendation, grants DHEC's motion, and dismisses the case.

## II. STATEMENT OF THE FACTS

Rogers worked at DHEC as a maintenance engineer for twenty-two years. As a benefit of his employment, Rogers participated in the long-term disability ("LTD") plan administered by the state of South Carolina. The LTD plan provides participants with one year of disability benefits for mental disorders, while benefits for physical ailments are available until the participant reaches the age of sixty-five.

While under the LTD plan, Rogers was diagnosed with psychological impairments, stress, and anxiety or panic attacks. (Mag. Judge's Rep. & Rec. at 2.) As a result of this diagnosis, Rogers received disability benefits for one year under the LTD plan. Rogers then filed the present action.

## III. DISCUSSION OF THE LAW

### A. Dismissal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party is entitled to dismissal of an action if "assuming the facts in the complaint are true, it is clear as a matter of law that no relief could be granted

under any set of facts that could be proved consistent with the allegations." *Miller v. Pulaski Sheriff's Dept.*, 30 F.3d 130 (4th Cir.1994). Thus, the court assumes that DHEC did pay Rogers only one year's worth of disability benefits, while affording physically disabled employees a much longer payment period. Even so, DHEC argues that: (1) the ADA does not regulate insurance policies, (2) title II of the ADA does not apply to employee benefits, and (3) the Rehabilitation Act does not require the extension of all benefits to all types of disabilities. (Mem. in Supp. of Defs.' Mot. to Dismiss.) The court will first address the applicability of title II, and then will discuss why Rogers' claim fails.

### B. Applicability of Title II

■ Rogers can bring his claim for discrimination under title II of the ADA. DHEC argues that claims for employee benefits may only be properly brought under titles I or III of the ADA. (Mem. in Supp. of Defs.' Mot. to Dismiss at 10.) While title I of the ADA is the primary vehicle for employment discrimination claims involving private employers, *see* 42 U.S.C. § 12112, title II seeks to prevent discrimination among public entities. *See* 42 U.S.C. § 12132. The language of title II's discrimination section fails to even mention the term "employment." *See id.*[2] However, the United States Court of Appeals for the Fourth Circuit has allowed an individual to maintain a claim under title II of the ADA for employment discrimination. *See Doe*, 50 F.3d at 1264–65. Therefore, although normally this case would arise under title I, Rogers can to bring his employment benefit discrimination claim under title II of the ADA.

■ Rogers' claim should be measured by the same standards as any discrimination claim under the ADA. The Code of Federal Regulations states: "No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity

---

**2.** This issue has sparked much discussion among the federal judiciary. A majority of federal district courts allow such actions, though a significant minority do not. *See Bledsoe*, 942 F.Supp. at 1442–43 (listing cases on both sides). As

noted in *Bledsoe* and discussed herein, the United States Court of Appeals for the Fourth Circuit is the only federal circuit court to address the issue, although it does so implicitly.

conducted by a public entity." 28 C.F.R. § 35.140(a). While this alone bolsters the Fourth Circuit's allowance of title II employment claims, the Code goes on to incorporate the "requirements of title I of the [ADA] ... [into] any service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I." *Id.* at § 35.140(b)(1).[3] Therefore, the language and precedent of title I govern Rogers' claim under title II of the ADA.

### C. Title II/Rehabilitation Act Claim

▉ Rogers' complaint fails to state a claim under the ADA's title II or the Rehabilitation Act. To establish an ADA title II/Rehabilitation Act violation, Rogers must show: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Adamczyk v. Chief, Baltimore County Police Dept.*, 952 F.Supp. 259, 263 (D.Md.1997) (citing *Doe*, 50 F.3d at 1265). There is no dispute that Rogers suffers from a disability. Rogers' claims that his mental disability qualifies him for the same benefits as a physically disabled employee, and that he was excluded from the physical disability benefits solely because he was mentally disabled. At its core, Rogers' argument is that DHEC's LTD plan "discriminated against him by arbitrarily providing different levels of benefits for psychological disabilities than provided for physical disabilities." (Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss at 1.)

A disability benefit plan like Rogers' LTD plan is common in today's workplace. However, the discriminatory effect of such a plan is not a settled point of law. Two United States Circuit Courts of Appeal have addressed this precise question and found that such disparity between physical and mental disabilities in a benefit plan is not unlawful discrimination. *See Parker v. Metropolitan Life Ins. Co.*, 121 F.3d 1006 (6th Cir.)(*en banc*), *petition for cert. filed*, No. 97–747, 66 USLW 3338 (Oct. 30, 1997); *E.E.O.C. v. CNA Ins. Cos.*, 96 F.3d 1039 (7th Cir.1996). Though the Fourth Circuit has not ruled on the issue, one district court in our circuit has issued an opinion, finding that such a distinction does constitute discrimination under the ADA. *See Lewis v. Aetna Life Ins. Co.*, 982 F.Supp. 1158 (E.D.Va.1997). All of these cases deal with the question in the context of an ADA title I or title III claim. As noted above, the same analysis applies to the instant case.

#### 1. Precedent finding no cause of action under the ADA

In *Parker,* the Sixth Circuit Court of Appeals held that a long-term disability benefit policy with separate payment periods for physical and mental disabilities does not violate the ADA or the Rehabilitation Act.[4] The court held that the ADA "does not mandate equality between individuals with different disabilities. Rather, the ADA prohibits discrimination between the disabled and the non-disabled." *Parker,* 121 F.3d at 1015. The *Parker* court based its decision on the language of the ADA and on several cases that stated the same rule, although in different contexts.[5]

---

**3.** *See also* Anne B. Thomas, *Beyond the Rehabilitation Act of 1973: Title II of the Americans with Disabilities Act*, 22 N.M. L.Rev. 243, 245 (1992) ("It was intended ... that the forms of discrimination prohibited by [title II] of the ADA would be identical to those set forth in the applicable provisions of titles I and III.").

**4.** The court notes that the *Parker* opinion was the result of a detailed analysis of this issue by the Sixth Circuit. A three-member panel of the Sixth Circuit first heard the *Parker* appeal and found that the ADA did cover the plaintiff's claim. *See Parker v. Metropolitan Life Ins. Co.,* 99 F.3d 181 (6th Cir.1996) An *en banc* session of the Sixth Circuit reheard the *Parker* case, vacated the original panel's opinion, and found the plaintiff's case failed under the ADA.

**5.** *See Traynor v. Turnage,* 485 U.S. 535, 549, 108 S.Ct. 1372, 1382, 99 L.Ed.2d 618 (1988) (in a veterans' benefit plan, the Rehabilitation Act does not require "any benefit extended to one category of handicapped persons also be extended to all other categories of handicapped persons"); *Krauel v. Iowa Methodist Med. Ctr.,* 95 F.3d 674, 678 (8th Cir.1996) (under the ADA, distinctions in employee medical plans "that apply equally to all insured employees, that is, to individuals with disabilities and to those who are not disabled, do not discriminate on the basis of disability"); *Modderno v. King,* 82 F.3d 1059, 1062 (D.C.Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997) (the Rehabilitation Act permits Foreign Service Benefit Plan to have "partial limits that leave some dis-

In analyzing the language of the ADA,[6] the *Parker* court held that the Act addressed only discrimination between the disabled and the non-disabled. Borrowing the reasoning of the Seventh Circuit Court of Appeals, the *Parker* court noted: "Without far stronger language in the ADA [making it unlawful to discriminate between employees with different disabilities], we are loath to read into it a rule that has been the subject of vigorous, sometimes contentious, national debate for the last several years." *Id.* at 1017 (quoting *CNA*, 96 F.3d at 1044). The court went on to detail Congress' pertinent legislation since the passage of the ADA:

> [In September 1996], Congress enacted the Mental Health Parity Act, 42 U.S.C. § 300gg–5, as an amendment to the Health Insurance Portability Act. The Mental Health Parity Act mandates, inter alia, that where a health insurance plan contains no lifetime limit or annual limit for medical or surgical benefits, the plan may not contain a lifetime or annual limit for mental health benefits. Similarly, if the health insurance policy includes an annual or lifetime limit on medical or surgical benefits, the plan must apply the same limits to mental health benefits. [As argued], Congress' passage of the Mental Health Parity Act suggests Congress believed that the ADA neither governs the content of insurance policies nor requires parity between physical and mental illnesses; thus, passage of a law requiring such parity was required if Congress desired insurance carriers to cease including disparate mental and physical health benefits in insurance policies. Particularly pertinent to the instant case, however, the Health Insurance Portability Act specifically exempts from its coverage "disability income insurance." While Congress likely realized that equality between the two types of disabilities was not covered by the ADA, it sought to remedy the absence only in the context of health insurance coverage, not long-term disability policies. *Thus, it ap-*

> *pears that Congress did not believe the necessity for parity between mental and physical disabilities in long-term disability plans was sufficiently compelling to include them within the purview of the Act.*

*Id.* at 1017–1018 (citations omitted)(emphasis added). As articulated by the Sixth Circuit, this is the only inference that the present court can draw from the language of the ADA and subsequent Congressional action. Therefore, the ADA proscribes only discrimination between the disabled and the non-disabled. The gravamen of Rogers' claim, discrimination between individuals with different disabilities, is not governed by the ADA.

### 2. Precedent finding proper cause of action under the ADA

Only one court has allowed an ADA claim based on a disparity between mental and physical disabilities in an employee disability plan. Because this decision comes from within the Fourth Circuit, it merits some attention. In *Lewis*, United States District Judge Brinkema of the Eastern District of Virginia recently allowed a claim identical to Rogers' to survive a motion to dismiss. The *Lewis* court stated:

> [T]he ADA prohibits discrimination on the basis of an individual's particular disability. Thus, whether a disabled person is treated differently than a non-disabled person or another disabled person, the same wrong has occurred. That is, the person has been discriminated against because of his particular disability.

*Lewis*, at 1168. Based on this reasoning, Judge Brinkema concluded: "[T]he ADA must be construed to prohibit discrimination against individuals based on their specific disability, and not merely to prohibit discrimination that negatively affects the disabled as a class." *Id.* at 1169.

Though the *Lewis* court briefly discusses the *Parker* and the *CNA* opinions, it fails to confront the sound reasoning of the Sixth

---

abled individuals better off and the remainder no worse off").

**6.** As noted above, title I of the ADA provides the guidelines for employment actions under the Act. Title I reads: "No covered entity shall discrimi-

nate against a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

and Seventh Circuits. The *Lewis* court noted that its defendants cited the *Parker* and *CNA* cases because they found only discrimination between the disabled and the non-disabled was prohibited by the ADA, while discrimination between individuals with different disabilities was not. *Id.* at 1168. However, Judge Brinkema summarily determined that "the distinction drawn by the defendants is illusory." *Id.* at 1168. In doing so, the *Lewis* court also found that the reasoning of the Seventh Circuit Court of Appeals and an *en banc* session of the Sixth Circuit Court of Appeals was also "illusory."[7] As outlined above, this court finds the opinions of the Sixth and Seventh Circuits more persuasive than *Lewis*. A clear reading of the ADA and subsequent Congressional action reveals that the charges listed in Rogers' complaint do not amount to unlawful discrimination under the ADA or the Rehabilitation Act.

## IV. CONCLUSION

Rogers claims that DHEC's disparate treatment of physical and mental disabilities constitutes unlawful discrimination under the ADA and the Rehabilitation Act. This argument is without merit. Though Rogers is no doubt disabled, he is not otherwise qualified for the benefit in question, i.e., the longer physical disability benefit. His mental disability qualifies him only for the benefit he received. DHEC did not discriminate against Rogers in denying him the physical disability benefit. DHEC simply followed the language of its policy.

For the foregoing reasons, the court finds that Rogers' complaint fails to state a viable claim of discrimination under the ADA or the Rehabilitation Act. The court incorporates the magistrate judge's Report and Recommendation in this opinion. Accordingly, it is

**ORDERED** that the defendants' motion to dismiss the complaint is granted.

**IT IS SO ORDERED.**

---

**7.** Furthermore, the *Lewis* decision uses a footnote to dispense of adverse precedent under the Rehabilitation Act. *Lewis,* at 1167 n. 8. Though cases discussing the Rehabilitation Act may have warranted little attention in that case, they are of significant value to the instant case, as Rogers bases his claim, in part, on the Rehabilitation Act.